UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYAN ABDUL WAKIL,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*,<br><br>Respondents. | Case No. 1:25-cv-01098-CDB (HC)<br><br>ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Docs. 1, 13, 14, 16, 18)<br><br>ORDER MAINTAINING JURISDICTION AND DIRECTING RESPONDENTS TO FILE REPORT REGARDING PETITIONER'S STATUS AND TO SHOW CAUSE WHY PETITIONER SHOULD NOT BE RELEASED AND SUBJECT TO A BOND HEARING PRIOR TO ANY RE-DETENTION FOLLOWING STATUTORY REMOVAL PERIOD<br><br>**March 30, 2026, Deadline** |

Petitioner Ayan Abdul Wakil ("Petitioner"), a federal detainee, proceeds pro se and *in forma pauperis* with a petition for writ of habeas corpus filed under 28 U.S.C. § 2241. (Doc. 1).[1] For the reasons set forth below, the Court will deny Petitioner's petition at this time, maintain jurisdiction during the statutory removal period (*see* 8 U.S.C. § 1231), and direct Respondents to file a report

---

[1] All parties have consented to the jurisdiction of a U.S. magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 12).

no later than March 30, 2026, addressing Petitioner's status and, if not already removed, showing cause why Petitioner should not be released and subject to a bond hearing prior to any re-detention.

## I.    Background

### A.    Procedural History

On August 29, 2025, Petitioner filed the instant petition while in custody of the Immigration and Customs Enforcement ("ICE") at the Golden State Annex, located in McFarland, California. *Id*. Petitioner alleges that his continued detention in an immigration jail pending resolution of removal proceedings without first being provided a due process hearing violates his constitutional and statutory rights. *Id.* ¶¶ 1–3.

After the Court preliminarily concluded that Petitioner's petition may be cognizable under § 2241, on September 4, 2025, the Court set a briefing schedule on the petition. (Doc. 7). On October 17, 2025, Respondents timely filed a response to the petition. (Doc. 14). Petitioner filed a brief in support of his petition on October 14, 2025, and a supplemental brief on November 10, 2025. (Docs. 13, 16).[2] On December 30, 2025, Respondents filed a notice indicating that the Ninth Circuit Court of Appeals dismissed Petitioner's petition for review of an order issued in expedited removal proceedings for lack of jurisdiction, denied his motion for stay of removal, and lifted the temporary stay of removal entered upon Petitioner's commencement of those appellate proceedings. (Doc. 18).

On January 5, 2026, Petitioner filed a motion for temporary restraining order ("TRO"), and on January 13, 2026, the Court denied Petitioner's motion. (Docs. 20, 21). The Court found that because Petitioner did not file his motion for TRO or seek any other emergency relief until approximately nine months after he had been re-detained by immigration authorities and more than three months after he filed his petition for writ of habeas corpus, and because the motion improperly sought relief other than what is sought in his petition, the Court found that Petitioner is not entitled to a TRO. *Id.* at 4-6.

---

[2] Petitioner's filing (Doc. 17) appears to be an opinion letter he drafted and excerpts of online news articles that are unrelated to his claims for relief.

On January 16, 2026, Petitioner filed a supplemental request for emergency stay of removal in support of his TRO motion.  (Doc. 22).

### B.    Factual Background

In his petition, Petitioner alleges that his prolonged detention without a bond hearing to consider whether he is a danger and/or a flight risk violates his Fifth Amendment due process rights, and he seeks the Court issue a writ of habeas corpus, determine that his detention is not justified because the government has not established by clear and convincing evidence that he presents a flight risk or a danger, and order his release with appropriate conditions of supervision if necessary. (Doc. 1 ¶¶ 3, 4).  Alternatively, Petitioner seeks the Court order his release within 30 days unless Respondents schedule a bond hearing before an immigration judge ("IJ").  *Id.* ¶ 5.

The record shows that Petitioner entered the United States on January 4, 2025, was immediately detained by immigration authorities, and placed in expedited removal proceedings pursuant to 8 U.S.C. § 1225(b).  (Doc. 14-2, Exhibit ["Ex."] 1).  He was released from a "Georgia detention center on one year parole" on January 28, 2025.  (Doc. 20 at 4, 9 ¶ 5).  On March 26, 2025, Petitioner was re-detained by immigration authorities during a scheduled check-in and has since been "in immigration custody for over [six] months[.]" (Doc. 1 ¶¶ 1, 19); *see id.* ¶ 39 ("As noted, Petitioner has been detained for a substantial length of time[.]"); (Doc. 20 ¶ 5).  On May 6, 2025, Petitioner was served a negative credible fear finding issued by an IJ.  *See* (Doc. 1 at 6, 20, 21-22); (Doc. 14-2 at 13-14) (May 12, 2025, final order of immigration judge affirming DHS credible fear determination and returning case to DHS for removal of Petitioner).  On August 1, 2025, USCIS denied Petitioner's request for reconsideration of the negative credible fear determination, noting that Petitioner previously requested reconsideration on May 19, 2025.  *Id.* at 20; *see* (Doc. 14-2 at 16) (June 13, 2025, Board of Immigration Appeals ("BIA") rejection of appeal for review of credible fear determination).

Pursuant to Petitioner's May 12, 2025, final order of expedited removal under 8 U.S.C. § 1225(b)(1), in June 2025, ICE obtained travel documents and arranged for Petitioner to be removed to his home country of Afghanistan via a commercial flight; however, removal was not effectuated after Petitioner refused to board the plane.  (Doc. 14 at 2).  Petitioner then sought review of BIA's

refusal to consider his appeal of the negative credible fear finding, and on December 29, 2025, the Ninth Circuit Court of Appeals dismissed Petitioner's petition for review for lack of jurisdiction, denied his motion for stay of removal, and lifted the temporary stay of removal that operated during the pendency of Petitioner's appeal.  (Doc. 18).

**II.    Governing Authority**[3]

The parties do not dispute that Petitioner is detained pursuant to 8 U.S.C. § 1225.  *See* (Doc. 1 ¶ 37) ("Unlike the petitioner in *Rodriguez Diaz* [who is subject to detention under § 1226(a)], Petitioner has no statutory access to individualized review of his detention."); (Doc. 14 at 2). Petitioner is the subject of a May 12, 2025[,] final order of expedited removal under [] § 1225(b)(1) and is being detained under expedited removal procedures requiring mandatory detention until he is removed.") (citing 8 U.S.C. § 1225(b)(1)(B)(iii)(IV)).

The Court adopts the recitation of the governing legal standard set forth by the district court in *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503 (N.D. Cal. Sept 12, 2025), as follows:

> **1.    Expedited Removal and Mandatory Detention (§ 1225)**
>
> While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:
>
>> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further

---

[3] The Court has jurisdiction over Petitioner's claim that he is improperly detained, pursuant to 28 U.S.C. § 2241.  *See* (Docs. 1, 7).  Respondents do not challenge the Court's jurisdiction over Petitioner's claim. *See generally* (Doc. 14).

hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group – designated noncitizens – includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal.

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are

> inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to vast numbers of noncitizens present in the interior of the United States.
>
> Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.")
>
> ...

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (certain internal citations and footnotes omitted).

### III.   <u>Discussion</u>[4]

#### A.   **Exhaustion**

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it

---

[4] Filings are referenced herein according to the associated CM/ECF-designated pagination.

may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)). "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762 n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

Here, because Petitioner contends that he has no statutory access to individualized review of his detention as he is detained under 8 U.S.C. § 1225(b), Respondents agree that Petitioner is subject to mandatory detention under that statute, and Respondents do not address exhaustion of administrative remedies in their opposition to the petition, the Court finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means. *See* (Doc. 1 ¶ 37); (Doc. 14 at 2); *Jennings v. Rodriguez,* 583 U.S. 281, 282 (2018) ("§§ 1225(b) … do[e]s not give detained aliens the right to periodic bond hearings during the course of their detention."); *Rodriguez Diaz v. Garland*, 53 F. 4th 1189, 1201 (9th Cir. 2022); *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) ("[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'") (citing *Laing*, 370 F.3d at 1000); *e.g.*, *Chavez v. Noem*, -- F. Supp. 3d. --, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025) ("The Court therefore finds the prudential exhaustion requirements waived for futility. Because Petitioners need to show only one of the Laing factors applies, … the Court need not address the other factors.") (internal citation omitted).

**B.    Petitioner's Due Process Claim**

The Court has reviewed Petitioner's petition, and the papers filed thus far in this matter, including Respondents' response to the petition (Doc. 14), Petitioner's supplemental briefs in

support of his petition (Docs. 13, 16), and Respondents' notice regarding the Ninth Circuit decision dismissing Petitioner's petition for review (Doc. 18).

In light of the Ninth Circuit's dismissal of Petitioner's appeal of the BIA's review of the negative credible fear interview finding, and because Petitioner's order of removal unquestionably is final as of the date of that order, under 8 U.S.C. § 1231(a), Petitioner must be detained for up to 90 days following entry of the Ninth Circuit's order on December 29, 2025.  *See* 8 U.S.C. § 1231(a)(1)(A) ("[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."); *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) ("After entry of a final removal order and during the 90-day removal period, … aliens must be held in custody.") (citing 8 U.S.C. § 1231(a)(2)); 8 U.S.C. § 1231(a)(1)(B(iii) ("The removal period begins on the latest of the following: … if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order."); *see also Turchyn v. Casey*, No. 3:25-cv-02120-JES-BLM, 2025 WL 3142482, at *3 (S.D. Cal. Nov. 10, 2025) ("Petitioner's current detention subject to a final order of removal falls under [] § 1231(a)(2)(A) because there is now no pending case and a final order of removal against him. The IJ issued a final order of removal against [p]etitioner on September 19, 2025, starting the 90-day removal period, which will still be in effect when this order is filed.") (citing 8 U.S.C. § 1231(a)(1)(A)-(B)).

Here, Petitioner was immediately apprehended by immigration authorities upon crossing the border from Mexico into the United States and placed into expedited removal proceedings.  *See* (Doc. 14-2, Ex. 1) (January 5, 2025, notice and order of expedited removal).  Therefore, Petitioner was properly detained under § 1225(b) as an "arriving" non-citizen.  *See Jennings*, 583 U.S. at 303 (2018).  Petitioner was released on what Respondents refer to as "interim parole" pending Petitioner's referral to a credible fear interview with an asylum officer.  *See* (Doc. 14 at 2-3).  It is unclear whether Petitioner was released on "conditional parole" under § 1225 or humanitarian parole under § 1182.  *See* 8 U.S.C. § 1182; (Doc. 16 at 2) (stating that Petitioner was released from immigration custody on January 28, 2025, "on one year parole"); (Doc. 22 at 4) (stating upon his release and for approximately two months prior to his re-arrest, he lived with a friend in Pleasant Hill, CA, during which time he attended both of his scheduled ICE appointments); *Aviles-Mena v.*

*Kaiser*, No. 25-cv-06783-RFL, 2025 WL 2578215, at \*4-5 (N.D. Cal. Sept. 5, 2025), *appeal filed*, No. 25-6999 (9th Cir. Nov. 5, 2025) (reconciling parole under § 1225(b)(1) with "conditional parole" under § 1226(a), finding that "when ICE affirmatively chooses to release an individual on parole, it has made the determination that it no longer intends to fast-track [the individual's] removal and that it will proceed with the standard removal process under 8 U.S.C. § 1229a" and "because Aviles-Mena was 'paroled into the United States,' he cannot be subject to expedited removal under [§ 1225(b)(1)] and has a protectable liberty interest [subject to procedural due process protections].").  In all events, while revocation of Petitioner's parole without a bond or custody hearing may implicate a due process issue, *see Aviles-Mena*, 2025 WL 2578215, at \*5, as noted above, relief under due process is unavailable at this time in light of the final order of removal entered against Petitioner.  Section 1231(a) attaches such that Petitioner must be detained for up to the 90-day statutory period pending removal, and thus Petitioner's petition for relief under due process must be denied.  *See Turchyn*, 2025 WL 3142482, at \*3 ("assuming no defects in the [final] removal order, *Zadvydas* due process analysis does not begin until the close of the statutory 90-day removal period. … Thus, Respondents have not violated [p]etitioner's due process rights by detaining him following the IJ's issuance of the final order of removal against him.") (citation omitted).

    In light of the posture of the case, the Court will maintain jurisdiction over this action throughout the statutory 90-day removal period and order Respondents to file a report no later than the expiration of that period, *i.e.*, no later than March 30, 2026, updating the Court on Petitioner's status and to showing cause why, if he has not been removed, Petitioner should not be released and subject to a bond hearing prior to any re-detention based on the reasoning articulated in *Aviles-Mena*.  *See Aviles-Mena*, 2025 WL 2578215, at \*5-6 (undertaking procedural due process analysis under *Mathews v. Eldridge*, 424 U.S. 319 (1976) following determination that petitioner was paroled into the United States). See, e.g., *Huang v. Albarran*, No. 1:25-cv-01308 JLT EPG, 2025 WL 2986885, at \*4 (E.D. Cal. Oct. 23, 2025) ("When, as here, a noncitizen does not leave or is not removed within the 90-day removal period, the individual, 'pending removal, shall be subject to

supervision.' [] 'As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention.'") (internal citations omitted).

### C.    Petitioner's Supplemental Request for Emergency Stay of Removal

Separately, the Court has reviewed Petitioner's supplemental request for emergency stay of removal in support of his motion for TRO, filed on January 16, 2026. (Doc. 22). In brief, Petitioner seeks the Court enter an emergency stay of removal based on a number of asserted infirmities in the underlying removal proceedings and negative credible fear interview finding. Petitioner maintains that the government's denial of his request for removal to a third country subjects him to severe persecution if he is deported back to his home country of Afghanistan. *Id.* at 2-3.

The Court does not have jurisdiction to review the issues raised in Petitioner's filings about the alleged defects in his removal proceedings, including the negative credible fear finding affirmed by the IJ. *See* 8 U.S.C. § 1252. Separately, Petitioner's arguments regarding his removal proceedings and seeking of an emergency stay of removal are not within the four corners of his petition which seek relief relating to his *detention and custody*, rather than his removal.

## IV.    Conclusion and Order

Accordingly, it is HEREBY ORDERED that:

1. Petitioner's petition for writ of habeas corpus (Doc. 1) is DENIED;

2. The Court shall retain jurisdiction over this action during the statutory removal period (*see* 8 U.S.C. § 1231(a));

3. Respondents SHALL FILE **no later than March 30, 2026**, a report addressing Petitioner's removal status and to show cause why, if he has not then been removed, Petitioner should not be released and subject to a bond hearing prior to any re-detention based on the reasoning articulated in *Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL, 2025 WL 2578215, at *5-6 (N.D. Cal. Sept. 5, 2025), *appeal filed*, No. 25-6999 (9th Cir. Nov. 5, 2025); and

///

///

///

4. The Clerk of the Corut is DIRECTED to enter judgment accordingly and to close this case.

IT IS SO ORDERED.

Dated:    **January 21, 2026**

_____

UNITED STATES MAGISTRATE JUDGE

11