UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYAN ABDUL WAKIL,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*,<br><br>Respondents. | Case No. 1:25-cv-01098-CDB (HC)<br><br>ORDER DIRECTING RESPONDENTS TO FILE REPORT<br><br>(Docs. 25, 27, 29, 30)<br><br>**14-Day Deadline** |

Petitioner Ayan Abdul Wakil ("Petitioner") is a federal immigration detainee proceeding pro se and *in forma pauperis*.[1]

**Relevant Background**

On August 29, 2025, Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 while in custody of the Immigration and Customs Enforcement ("ICE") at the Golden State Annex, located in McFarland, California.  (Doc. 1).  After the Court preliminarily concluded that Petitioner's petition may be cognizable under § 2241, on September 4, 2025, the Court set a briefing schedule on the petition.  (Doc. 7).  On October 17, 2025, Respondents timely filed a response to

---

[1] All parties have consented to the jurisdiction of a U.S. magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1).  (Doc. 12).

the petition. (Doc. 14). Petitioner filed a brief in support of his petition on October 14, 2025, and a supplemental brief on November 10, 2025. (Docs. 13, 16).[2]

On December 30, 2025, Respondents filed a notice indicating that the Ninth Circuit Court of Appeals dismissed Petitioner's petition for review of an order issued in expedited removal proceedings for lack of jurisdiction, denied Petitioner's motion for stay of removal, and lifted the temporary stay of removal entered upon Petitioner's commencement of those appellate proceedings. (Doc. 18).

On January 5, 2026, Petitioner filed a motion for temporary restraining order ("TRO"), and on January 13, 2026, the Court denied Petitioner's motion as untimely and because the motion improperly sought relief other than what is sought in his petition. (Docs. 20, 21). On January 16, 2026, Petitioner filed a supplemental request for emergency stay of removal in support of his TRO motion. (Doc. 22).

On January 21, 2026, the Court denied Petitioner's petition for writ of habeas corpus. (Doc. 23). The Court found that, upon the Ninth Circuit's dismissal of Petitioner's appeal of the negative credible fear interview finding in his underlying immigration proceedings, Petitioner became subject to mandatory detention for up to 90 days under 8 U.S.C. § 1231(a) within which the government was obligated to effect his final order of removal. *Id.* at 8. Because the 90-day removal period would expire on or about and March 30, 2026, in its order, the Court maintained jurisdiction and directed Respondents to file a report by that same date regarding Petitioner's status and to show cause why he should not be released and subject to a bond hearing prior to any re-detention following the statutory removal period. *Id.* at 10.

On March 30, 2026, Respondents timely filed a report in which they assert that Petitioner repeatedly has acted to prevent his removal, including specifically (1) by refusing in June 2025 to board aircraft available to transport him in furtherance of the order of removal, (2) by stating that he "refused to depart the United States" on January 14, 2026, and (3) refusing to depart the United

_____

[2] Petitioner's filing (Doc. 17) appears to be an opinion letter he drafted and excerpts of online news articles.

States on March 4, 2026.  (Doc. 25).[3]  Respondents also represent that, as of March 24, 2026, charter flights to the Afghanistan region were postponed until at least May 2026 due to the conflict in the Middle East.  *Id.* at 3.

On April 10, 2026, Petitioner filed a "Petition to deny Respondent's Status Report" and "Request for Release" in which he raised arguments largely already considered by the Court in resolving his petition and motion for TRO.  (Doc. 29); *see* (Docs. 21, 23).  Petitioner represents that he has consistently cooperated with Respondents as he "has never refused to depart the United States to a third country, rather, he has always sought deportation to a third country" and that he told his deportation officer that he "would cooperate" even if he was sent to prison.  (Doc. 29 at 6-7).  Petitioner requests the Court issue an order that he should be released and provided a bond hearing prior to any re-detention following the statutory removal period.  *Id.* at 11.

On June 4, 2026, Petitioner filed a "Motion to Compel Respondents to Correct the Administrative Record" in which he seeks a court order compelling Respondents to correct the administrative record "to reflect the legally accurate date of the final negative credible fear determination and service of the expedited removal order."  (Doc. 30 at 2).  Petitioner asserts that no credible fear determination existed on May 6, 2025, as the immigration judge ("IJ") review proceeding remained pending, no legally effective expedited removal order could yet issue, and the IJ did not affirm the negative credible fear finding until May 12, 2025.  *Id.*  Petitioner argues the government's erroneous recording of May 6, 2025, as the final service date "materially prejudiced" him because the asylum office subsequently denied his request for re-interview as untimely.  *Id.*

**Discussion**

Respondents' status reports filed at the direction of the Court do not adequately demonstrate that Petitioner's removal period may be extended beyond 90 days.  Under 8 U.S.C. § 1231(a)(1)(C), the 90-day period may be extended only if Petitioner (1) "fails or refuses to make timely application in good faith for travel or other documents necessary to the [his] departure or" (2) "conspires or acts to prevent [his] removal subject to an order of removal."   First, it is unclear what if any travel

---

[3] The Court misconstrued Respondents' filing to imply that Petitioner also refused to board aircraft on January 14, 2026, and March 4, 2026 (*see* Doc. 26) and Respondents timely filed a supplemental report correcting the Court's misunderstanding (Doc. 27).

documents Petitioner is required to but has refused to obtain given Respondents' representations that they were prepared to remove Petitioner in June 2025, and separately, that they prepared to place him on a charter flight for removal on or about March 5, 2026. (Doc. 25 at 3) (citing Declaration of deportation officer Farshid Moradi Kouchi ["Kouchi Decl.], Doc. 25-1, ¶¶ 7, 12). These representations appear to suggest that Respondents have obtained sufficient travel documents to facilitate Petitioner's removal. Second, although Respondents represent that Petitioner stated that he "refused to depart the United States" on January 14, 2026 (Doc. 25 at 2) and refused to depart the United States on March 4, 2026 (*id*. at 3), the evidence they cite does not establish either of these facts. *See* (Kouchi Decl. ¶¶ 9 & Ex. 9, 11 & Ex. 11).

Respondents cite and rely on the Ninth Circuit's opinion in *Pelich v. I.N.S.* (329 F.3d 1057 (9th Cir. 2003)), in which the Court denied a petitioner's application for writ of habeas corpus when his detention persisted after the statutory 90-day removal period had expired. (Doc. 25 at 3). The Court found that the petitioner's "behavior places him within that class of aliens properly detained pursuant to 8 U.S.C. § 1231(a)(1)(C)." *Pelich*, 329 F.3d at 1061. In reaching this conclusion, the *Pelich* Court relied on the fact that the petitioner "steadfastly refused to fill out a Polish passport application, which directly impedes Poland's ability to determine whether Pelich qualifies for Polish travel document," and that he "provided the INS with conflicting information regarding his name, his parents' names, his parents' birthplaces and residences, his birthplace and his nationality." *Id.* at 1059. Here, in contrast, Respondents have not identified similar affirmative misconduct by Petitioner since the 90-day removal period began (and now has expired) that would permit a finding pursuant to § 1231(a)(1)(C) that Petitioner's lack of cooperation in facilitating removal warrants extending the removal period. *Cf. Diouf v. Mukasey*, 542 F.3d 1222, 1231 (9th Cir. 2008) (noting that § 1231(a)(1)(C) permits restarting the 90-day period of mandatory detention "following the latest date of documented obstruction" by the noncitizen ordered removed).

In short, it is unclear what if anything Petitioner has done to impede Respondents' ability to effect his removal since the Ninth Circuit denied Petitioner's appeal in his underlying immigration proceedings and lifted the stay of removal. Instead, Respondents' representations

reflect that the conflict in the Middle East and the unavailability of charter flights to the region have stalled the government's ability to remove Petitioner. *See id*. ¶¶ 12-14.

Respondents separately argue that, even if the 90-day removal period is not properly extended pursuant to § 1231(a)(1)(C) under the circumstances present here, upon the expiration of the 90-day removal period (*e.g.*, March 30, 2026), detention nevertheless is authorized pursuant to § 1231(a)(6) for an additional period of time. (Doc. 25 at 4 n.2). While that is correct, Respondents incorrectly argue that the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) recognized as presumptively reasonable a six-month period of detention *following* the expiration of the 90-day removal period. (Doc. 25 at 4 n.2). In fact, the *Zadvydas* court found that an order of detention during the first six months *after entry of a final removal order* is presumptively reasonable. *Zadvydas*, 533 U.S. at 701.

Accordingly, the Court will order Respondents to file a further status report, supported as necessary by a declaration of a knowledgeable witness, setting forth: (1) any affirmative misconduct by Petitioner since the 90-day removal period began (*e.g.*, December 29, 2025) that would permit a finding pursuant to § 1231(a)(1)(C) that Petitioner's lack of cooperation in facilitating removal warrants extending the 90-day removal period during which detention is mandated; and (2) all efforts Respondents have undertaken since the 90-day removal period began to facilitate Petitioner's removal.

**Conclusion and Order**

Accordingly, it is HEREBY ORDERED that Respondents SHALL FILE with the Court and SHALL SERVE upon Petitioner within **14 days** of entry of this order a further status report, supported as necessary by a declaration of a knowledgeable witness, setting forth: (1) any affirmative misconduct by Petitioner since the 90-day removal period began (*e.g.*, December 29, 2025) that would permit a finding pursuant to § 1231(a)(1)(C) that Petitioner's lack of cooperation in facilitating removal warrants extending the 90-day removal period during which detention is mandated; and (2) all efforts Respondents have undertaken since the 90-day removal period began to facilitate Petitioner's removal.

///

5

Petitioner may file a response to Respondents' further status report within **21 days** of Respondents' filing and service thereof.

IT IS SO ORDERED.

Dated:    **June 10, 2026**

_____
UNITED STATES MAGISTRATE JUDGE