UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYAN ABDUL WAKIL,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*,<br><br>Respondents. | Case No. 1:25-cv-01098-CDB (HC)<br><br>ORDER DIRECTING RESPONDENTS TO SERVE PETITIONER AND TO FILE PROOF OF SERVICE **(5-Day Deadline)**<br><br>ORDER DIRECTING PETITIONER TO FILE A RESPONSE TO RESPONDENTS' STATUS REPORT **(21-Day Deadline)**<br><br>(Doc. 32) |

Petitioner Ayan Abdul Wakil ("Petitioner") is a federal immigration detainee proceeding pro se and *in forma pauperis*.[1]

**Relevant Background**

On August 29, 2025, Petitioner commenced this action with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241 while in custody of the Immigration and Customs Enforcement ("ICE") at the Golden State Annex, located in McFarland, California.  (Doc. 1).

On January 21, 2026, the Court denied Petitioner's petition for writ of habeas corpus. (Doc. 23).  The Court found that, upon the Ninth Circuit's dismissal of Petitioner's appeal of the negative

---

[1] All parties have consented to the jurisdiction of a U.S. magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1).  (Doc. 12).

credible fear interview finding in his underlying immigration proceedings, Petitioner became subject to mandatory detention for up to 90 days under 8 U.S.C. § 1231(a) within which the government was obligated to effect his final order of removal. *Id.* at 8. Because the 90-day removal period would expire on or about and March 30, 2026, in its order, the Court maintained jurisdiction and directed Respondents to file a report by that same date regarding Petitioner's status and to show cause why he should not be released and subject to a bond hearing prior to any re-detention following expiration of the statutory removal period. *Id.* at 10.

On March 30, 2026, Respondents timely filed a report in which they assert that Petitioner repeatedly has acted to prevent his removal, including specifically (1) by refusing in June 2025 to board aircraft available to transport him in furtherance of the order of removal, (2) by stating that he "refused to depart the United States" on January 14, 2026, and (3) refusing to depart the United States on March 4, 2026. (Doc. 25).[2] Respondents also represent that, as of March 24, 2026, charter flights to the Afghanistan region were postponed until at least May 2026 due to the conflict in the Middle East. *Id.* at 3.

On April 10, 2026, Petitioner filed a "Petition to deny Respondent's Status Report" and "Request for Release" in which he raised arguments largely already considered by the Court in resolving his petition and motion for TRO. (Doc. 29); *see* (Docs. 21, 23). Petitioner represents that he has consistently cooperated with Respondents as he "has never refused to depart the United States to a third country, rather, he has always sought deportation to a third country" and that he told his deportation officer that he "would cooperate" even if he was sent to prison. (Doc. 29 at 6-7). Petitioner requests the Court issue an order that he should be released and provided a bond hearing prior to any re-detention following the statutory removal period. *Id.* at 11.

On June 10, 2026, the Court directed Respondents to file with the Court and serve upon Petitioner a further status report, supported as necessary by a declaration of a knowledgeable witness, setting forth: (1) any affirmative misconduct by Petitioner since the 90-day removal period began (*e.g.*, December 29, 2025) that would permit a finding pursuant to § 1231(a)(1)(C)

---

[2] The Court misconstrued Respondents' filing to imply that Petitioner also refused to board aircraft on January 14, 2026, and March 4, 2026 (*see* Doc. 26) and Respondents timely filed a supplemental report correcting the Court's misunderstanding (Doc. 27).

that Petitioner's lack of cooperation in facilitating removal warrants extending the 90-day removal period during which detention is mandated; and (2) all efforts Respondents have undertaken since the 90-day removal period began to facilitate Petitioner's removal.  (Doc. 31).

**Discussion**

Pending before the Court is Respondents' further status report, filed on June 24, 2026. (Doc. 32).  Despite the Court's order that Respondents serve Petitioner with a copy of their status report, Respondents' filing does not include a proof of service.  *See* Local Rule 135(c) (requiring Respondents' filings in this case to be accompanied with proof of service upon Petitioner). Accordingly, the Court will again order Respondents to serve Petitioner with a copy of their status report and file proof of service.

In their report, Respondents assert that Petitioner's continued detention under 8 U.S.C. § 1231(a)(1)(C) is justified and appropriate because Petitioner "has taken affirmative actions that have thwarted his own removal."  *Id.* at 1.  Respondents represent that on June 12, 2026, Deportation Officer Daniel Castillo interviewed Petitioner who reaffirmed in a signed, sworn statement that, "if ICE booked a commercial flight to remove him to Afghanistan, he would not voluntarily board that flight and depart the United States because he does not want to go to Afghanistan and wants to go to a third country."  *Id.* at 2; *see* (Doc. 32-1, Declaration of Deportation Officer Farshid Moradi Kouchi ("DO Kouchi Decl.") ¶ 14); (Doc. 32-1 at 10-12 ("Ex. 14")) (Record of Sworn Statement).  Respondents represent that Petitioner acknowledged his refusal to cooperate with the government's efforts to remove him on a commercial flight on June 17, 2025, and that Petitioner said "there are no circumstances under which he would voluntarily board a commercial flight arranged by ICE to return to Afghanistan."  *Id.*  Respondents further represent that Petitioner does not have a plan if third-country removal is not permitted and he would rather remain in ICE custody than go to Afghanistan.  *Id.*; DO Kouchi Decl. ¶ 15.  Respondents note that while ICE cannot currently charter a removal flight due to the conflict in the Middle East, removal by commercial airline remains a viable option, and ICE could place Petitioner on the next available commercial flights if he ceases his refusals.  *Id.* at 3 n. 3; DO Kouchi Decl. ¶ 17.

Based on Respondents' representations in their report, the declaration of DO Kouchi, and the Record of Sworn Statement regarding the June 12, 2026, interview between DO Castillo and Petitioner, the Court will direct Petitioner to file a response to Respondents' status report in which he shall confirm or deny that he would refuse to voluntarily board a commercial flight arranged by ICE to return to Afghanistan and that he would rather remain in ICE custody than go to Afghanistan.

**Conclusion and Order**

Accordingly, it is HEREBY ORDERED that Respondents shall serve Petitioner with a copy of their status report (Doc. 32) and file proof of service no later than **June 30, 2026**.

And it is FURTHER ORDERED that Petitioner shall file no later than **July 21, 2026**, a response to Respondents' status report in which he shall confirm or deny that he would refuse to voluntarily board a commercial flight arranged by ICE to return to Afghanistan and that he would rather remain in ICE custody than go to Afghanistan.

IT IS SO ORDERED.

Dated:    **June 25, 2026**                          

UNITED STATES MAGISTRATE JUDGE