UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYAN ABDUL WAKIL (A-Number: 221-312-305),<br>Petitioner,<br>v.<br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*,<br>Respondents. | Case No. 1:25-cv-01098-CDB (HC)<br><br>ORDER DENYING PETITIONER'S REQUESTS FOR RELEASE AND DIRECTING RESPONDENTS TO FILE FURTHER STATUS REPORT<br><br>(Docs. 29, 35, 36)<br><br>**September 3, 2026, Deadline** |

Petitioner Ayan Abdul Wakil ("Petitioner") is a federal immigration detainee proceeding pro se and *in forma pauperis*.[1]

## I. Relevant Background

On August 29, 2025, Petitioner commenced this action with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241 while in custody of the Immigration and Customs Enforcement ("ICE") at the Golden State Annex, located in McFarland, California. (Doc. 1).

On January 21, 2026, the Court denied Petitioner's petition for writ of habeas corpus. (Doc. 23). The Court found that, upon the Ninth Circuit's dismissal of Petitioner's appeal of the negative credible fear interview finding in his underlying immigration proceedings (*see* Doc. 18), Petitioner

[1] All parties have consented to the jurisdiction of a U.S. magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 12).

became subject to mandatory detention for up to 90 days under 8 U.S.C. § 1231(a) within which the government was obligated to effect his final order of removal. *Id.* at 8. Because the 90-day removal period would expire on or about and March 30, 2026, in its order, the Court maintained jurisdiction and directed Respondents to file a report by that same date regarding Petitioner's status and to show cause why he should not be released and subject to a bond hearing prior to any re-detention following expiration of the statutory removal period. *Id.* at 10.

On March 30, 2026, Respondents timely filed a report in which they assert that Petitioner repeatedly has acted to prevent his removal, including specifically (1) by refusing in June 2025 to board aircraft available to transport him in furtherance of the order of removal, (2) by stating that he "refused to depart the United States" on January 14, 2026, and (3) refusing to depart the United States on March 4, 2026. (Doc. 25).[2] Respondents also represent that, as of March 24, 2026, charter flights to the Afghanistan region were postponed until at least May 2026 due to the conflict in the Middle East, and if Petitioner ceases his refusal to depart the United States, ICE may arrange to place him on an available commercial flight. *Id.* at 3.

On April 10, 2026, Petitioner filed a "Petition to deny Respondent's Status Report" and "Request for Release" in which he raised arguments largely already considered by the Court in resolving his petition and motion for TRO. (Doc. 29); *see* (Docs. 21, 23). Petitioner represents that he has consistently cooperated with Respondents as he "has never refused to depart the United States to a third country, rather, he has always sought deportation to a third country" and that he told his deportation officer that he "would cooperate" even if he was sent to prison. (Doc. 29 at 6-7). Petitioner requests the Court issue an order that he should be released and provided a bond hearing prior to any re-detention following the statutory removal period. *Id.* at 11.

On June 10, 2026, the Court directed Respondents to file with the Court and serve upon Petitioner a further status report, supported as necessary by a declaration of a knowledgeable witness, setting forth: (1) any affirmative misconduct by Petitioner since the 90-day removal period began (*e.g.*, December 29, 2025) that would permit a finding pursuant to § 1231(a)(1)(C)

[2] The Court misconstrued Respondents' filing to imply that Petitioner also refused to board aircraft on January 14, 2026, and March 4, 2026 (*see* Doc. 26) and Respondents timely filed a supplemental report correcting the Court's misunderstanding (Doc. 27).

that Petitioner's lack of cooperation in facilitating removal warrants extending the 90-day removal period during which detention is mandated; and (2) all efforts Respondents have undertaken since the 90-day removal period began to facilitate Petitioner's removal. (Doc. 31). The Court explained that Respondents' status reports did not adequately demonstrate that Petitioner's removal period may be extended beyond 90 days because Respondents' representations suggest they have obtained sufficient travel documents to facilitate Petitioner's removal and that Respondents fail to cite evidence establishing the fact that Petitioner refused to depart the United States on January 14, 2026, and on March 4, 2026. *Id.* at 3-4.

On June 24, 2026, Respondents filed a status report in response to the Court's orders, asserting that Petitioner's continued detention under 8 U.S.C. § 1231(a)(1)(C) is justified and appropriate because Petitioner "has taken affirmative actions that have thwarted his own removal." (Doc. 32 at 1). Respondents represent that on June 12, 2026, Deportation Officer Daniel Castillo interviewed Petitioner who reaffirmed in a signed, sworn statement that, "if ICE booked a commercial flight to remove him to Afghanistan, he would not voluntarily board that flight and depart the United States because he does not want to go to Afghanistan and wants to go to a third country." *Id*. at 2; *see* (Doc. 32-1, Declaration of Deportation Officer Farshid Moradi Kouchi ("DO Kouchi Decl.") ¶ 14); (Doc. 32-1 at 10-12 ("Ex. 14")) (Record of Sworn Statement). Respondents represent that Petitioner acknowledged his earlier refusal to cooperate with the government's efforts to remove him on a commercial flight on June 17, 2025, and that Petitioner said "there are no circumstances under which he would voluntarily board a commercial flight arranged by ICE to return to Afghanistan." *Id*. Respondents further represent that Petitioner does not have a plan if third-country removal is not permitted and he would rather remain in ICE custody than go to Afghanistan. *Id*.; DO Kouchi Decl. ¶ 15. As of the date of their status report, Respondents note that while ICE cannot charter a removal flight due to the conflict in the Middle East, removal by commercial airline remains a viable option, and ICE could place Petitioner on the next available commercial flights if he ceases his refusals to cooperate in their removal efforts. *Id*. at 3 n. 3; DO Kouchi Decl. ¶ 17.

The next day, the Court ordered Respondents to serve Petitioner with a copy of their status report and file proof of service no later than June 30, 2026. (Doc. 33). The Court further ordered Petitioner to file no later than July 21, 2026, a response to Respondents' status report in which he shall confirm or deny that he would refuse to voluntarily board a commercial flight arranged by ICE to return to Afghanistan and that he would rather remain in ICE custody than go to Afghanistan. *Id.* at 4.

The Court takes judicial notice that the immigration judge ordered removal on May 12, 2025, no appeal was received, and Petitioner has no future scheduled immigration proceedings.[3]

## II. Discussion

Pending before the Court is Petitioner's response to Respondents' status report and request for release, filed on July 13, 2026, and supplemental motion in support of his request for release, filed on August 3, 2026. (Docs. 35, 36). Petitioner asserts that he has "consistently cooperated with DHS/ICE while requesting removal to a third-country[.]" (Doc. 35 at 2). Petitioner affirms that when he was asked by Deportation Officer Castillo whether he would voluntarily board a commercial flight to Afghanistan, Petitioner answered that he would not. *Id.*; *see id.* at 6. Petitioner asserts that the sworn interview with Deportation Officer Castillo demonstrates that he repeatedly declared his willingness to depart the United States and "[t]he only limitation [he] expressed was that he could not safety return to Afghanistan." *Id.* Petitioner argues that "Respondents present no evidence showing any significant steps taken to remove Petitioner" as "ICE officers repeatedly informed Petitioner that he would be removed to Afghanistan on a charter flight" but "this deportation was not carried out" and "[a]t no time before June 12, 2026, did Respondent [ask] whether Petitioner would cooperate[] with removal on a commercial flight or whether he would accept removal to a third country." *Id.* at 6. In his supplemental motion in support of his request

[3] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited Aug. 11, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [ ] therein."); *Argueta v. Walgreens Co*., 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

for release, Petitioner asserts that his immigration case "reopened" for administrative review with USCIS. (Doc. 36 at 2).

First, the Court finds that Petitioner's representations suggesting that his immigration proceedings are "reopened" based on his submission of an application to USCIS and a receipt of notice from the agency fail to demonstrate that his immigration proceedings have, in fact, been reopened. Indeed, as noted *supra*, the Ninth Circuit has dismissed Petitioner's appeal of the negative credible fear interview finding in his underlying immigration proceedings and review of Petitioner's immigration case information reveals Petitioner has no future scheduled immigration proceedings. *See* (Doc. 18). Therefore, to the extent Petitioner argues that his immigration proceedings have reopened such that the immigration judge's negative credible fear finding rendered against him is no longer final, that argument is disregarded.

Next, the Court considers whether Respondents have presented sufficient evidence showing affirmative misconduct by Petitioner since the 90-day removal period began (*e.g.*, December 29, 2025) that would permit a finding pursuant to § 1231(a)(1)(C) that Petitioner's lack of cooperation in facilitating removal warrants extending the 90-day removal period during which detention is mandated.

In a case such as this where the petitioner is the subject of a final order of removal, 8 U.S.C. § 1231 sets forth the governing detention framework, pursuant to which the government "shall remove the alien from the United States within a period of 90 days[.]" 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Under 8 U.S.C. § 1231(a)(1)(C), the 90-day period may be extended only if Petitioner (1) "fails or refuses to make timely application in good faith for travel or other documents necessary to the [his] departure or" (2) "conspires or acts to prevent [his] removal subject to an order of removal." *Id*. § 1231(a)(1)(C).

As the Court previously found, Petitioner's order of removal became final upon the Ninth Circuit's dismissal of Petitioner's appeal of the negative credible fear interview finding in his underlying immigration proceedings (*see* Doc. 18) and, accordingly, he was subject to mandatory

detention under 8 U.S.C. § 1231(a) through March 30, 2026. (Doc. 23 at 9-10). However, this period may be extended if Petitioner's subsequent actions qualify under § 1231(a)(1)(C).

The Ninth Circuit has held that § 1231(a)(1)(C) permits restarting the 90-day period of mandatory detention "following the latest date of documented obstruction" by the noncitizen ordered removed. *Diouf v. Mukasey*, 542 F.3d 1222, 1231 (9th Cir. 2008). In *Diouf*, during the 90-day removal period, the petitioner refused to cooperate with ICE's instruction to appear for deportation and repeatedly refused to leave the United States for a period of several months. *Id*. at 1230. The Ninth Circuit found that such conduct qualified under § 1231(a)(1)(C) and would extend the removal period, and that "the 90–day clock could restart following the latest date of documented obstruction." *Id*. at 1230-31. The Ninth Circuit found that the latest date of documented obstruction was ICE's July 20, 2005, warning to the petitioner for failure to depart. *Id.* at 1231 ("This would mean that Diouf's removal period and mandatory detention under § 1231(a)(2) lasted until October 18, 2005—90 days after the July 20 warning letter."). The Ninth Circuit further explained that "§ 1231(a)(1)(C) pertains only to intentionally obstructionist, bad faith tactics that are designed to frustrate the government's attempts to effectuate a removal order, not to an alien's good faith attempt to make use of legally available judicial review and remedies." *Id.* at 1232 (citations omitted).

Here, Respondents have proffered evidence that would permit a finding pursuant to § 1231(a)(1)(C) that Petitioner's lack of cooperation in facilitating removal warrants extending the 90-day removal period during which his detention is mandated. Respondents' March 30, 2026, report provides that Petitioner repeatedly has acted to prevent his removal by refusing in June 2025 to board a commercial flight available to transport him in furtherance of the order of removal, by again refusing to depart the United States on January 14, 2026, from which ICE issued him a Warning for Failure to Depart which Petitioner signed, and on March 4, 2026, after Petitioner again refused to depart the United States and was issued a subsequent Warning for Failure to Depart and instruction sheet, which Petitioner signed. *See* (Doc. 25 at 3); (Doc. 31 at 2-3). On June 12, 2026, Deportation Officer Castillo interviewed Petitioner who reaffirmed in a signed, sworn statement that "if ICE booked a commercial flight to remove him to Afghanistan, he would not voluntarily

board that flight and depart the United States because he does not want to go to Afghanistan and wants to go to a third country." (Doc. 32 at 1); DO Kouchi Decl. ¶ 14; Ex 14. Based on Respondents' latest report, the declaration of DO Kouchi, and the Record of Sworn Statement regarding the June 12, 2026, interview between DO Castillo and Petitioner, the Court ordered Petitioner to file a report in which he confirms or denies whether he would refuse to voluntarily board a commercial flight arranged by ICE to return to Afghanistan and that he would rather remain in ICE custody than go to Afghanistan. (Doc. 33 at 4). Petitioner's filings in response to Respondents' status report (Docs. 35, 36) affirming that he would refuse to voluntarily board a commercial flight arranged by ICE to return to Afghanistan and that he would rather remain in ICE custody than go to Afghanistan confirm that Petitioner would not cooperate with Respondents' efforts to facilitate Petitioner's removal.

Because Petitioner's filings (Docs. 35, 36) were in response to the Court's orders, the Court finds that Petitioner's latest date of obstruction was on June 12, 2026, during the interview between DO Castillo and Petitioner when Petitioner asserted that he would refuse to voluntarily board a commercial flight arranged by ICE to return to Afghanistan. Petitioner's lack of cooperation in facilitating removal based on his continued refusals to depart to the country designated in his final order of removal by means available to the government (*i.e.*, commercial air travel) warrants extending the 90-day removal period under § 1231(a)(1)(C) to September 10, 2026. *See Diouf*, 542 F.3d at 1230.

The Court finds that the removal period is extended to September 10, 2026, pursuant to § 1231(a)(1)(C) and that Petitioner's continued detention is mandatory and proper under § 1231(a)(2)(A). Therefore, the Court will deny Petitioner's requests for release and direct Respondents to serve and file no later than September 3, 2026, a further status report addressing Petitioner's removal status and show why, if he has not been removed, he should not be released and subject to a bond hearing prior to any re-detention following the statutory removal period. Petitioner will be permitted 14 days to respond to Respondents' status report.

///

///

## III. <u>Conclusion and Order</u>

Accordingly, it is HEREBY ORDERED that:

1. Petitioner's requests for release (Docs. 29, 35, 36) are DENIED;
2. Respondents SHALL SERVE and FILE **no later than September 3, 2026**, a status report addressing Petitioner's removal status and show cause why, if he has not then been removed, Petitioner remains subject to discretionary detention under § 1231(a)(6) or why Petitioner should not be released and subject to a bond hearing prior to any re-detention; and
3. Petitioner SHALL FILE a response to Respondents' status report no later than 14 days after its service and filing.

IT IS SO ORDERED.

Dated: **August 12, 2026**

UNITED STATES MAGISTRATE JUDGE