UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

AYAN ABDUL WAKIL
(A-Number: 221-312-305),

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*,

Respondents.

Case No. 1:25-cv-01098-CDB (HC)

ORDER DENYING PETITIONER'S FURTHER REQUEST FOR RELEASE AND DIRECTING RESPONDENTS TO FILE FURTHER STATUS REPORT

(Docs. 40, 41)

ORDER DENYING PETITIONER'S MOTION REGARDING MISSED USCIS BIOMETRICS APPOINTMENT AND DIRECTING CLERK OF THE COURT TO STRIKE PETITIONER'S FILING

(Doc. 38)

**November 3, 2026, Deadline**

Petitioner Ayan Abdul Wakil ("Petitioner") is a federal immigration detainee proceeding pro se and *in forma pauperis*.[1]

## I. Relevant Background

The parties are familiar with the factual and procedural background of this case, which the Court most recently summarized in its order, issued August 13, 2026, denying Petitioner's earlier

[1] All parties have consented to the jurisdiction of a U.S. magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 12).

request to be released from custody. *See* (Doc. 37 at 1-4). The Court incorporates here its summary of the background of this case.

In short, it is undisputed that after Petitioner was ordered removed to his home country of Afghanistan on May 12, 2025, ICE obtained travel documents and arranged for Petitioner to be removed via a commercial flight in June 2025; however, removal was not effectuated after Petitioner refused to board the airplane. The Ninth Circuit ultimately dismissed Petitioner's appeal of the expedited removal order for lack of jurisdiction. Thereafter, Petitioner repeatedly has refused to cooperate with the government's efforts to remove him. He refused to depart the United States on January 14, 2026, and on March 4, 2024, prompting ICE's issuance to him of a Warning for Failure to Depart, which Petitioner signed. On June 12, 2026, Petitioner signed a sworn statement that "if ICE booked a commercial flight to remove him to Afghanistan, he would not voluntarily board that flight and depart the United States because he does not want to go to Afghanistan and wants to go to a third country."

Based on these facts and circumstances, the Court found that Petitioner's removal period is extended to September 10, 2026, pursuant to §1231(a)(1)(C), and that Petitioner's continued detention is mandatory and proper under § 1231(a)(2)(A) based on Petitioner's continued refusals to depart to the country designated in his final order of removal by means available to the government.

In its August 13 order denying Petitioner's request for release, the Court (1) directed Respondents to file a further status report no later than September 3, 2026, addressing Petitioner's removal status and show cause why, if Petitioner has not been removed, Petitioner remains subject to discretionary detention under 8 U.S.C. § 1231(a)(6) or why Petitioner should not be released and subject to a bond hearing prior to any re-detention, and (2) directed Petitioner to file a response to Respondents' status report no later than 14 days from after its service and filing. (Doc. 37).

///

///

///

## II. **Discussion**[2]

Pending before the Court is Respondents' further status report in response to the Court's August 13 order, filed September 5, 2026. (Doc. 40). Respondents represent Petitioner's obstruction and failure to cooperate with the government's efforts to execute his final order of removal "continues." *Id.* at 1. Respondents represent that at an August 20, 2026, interview with his deportation officer regarding Petitioner's willingness to cooperate with his removal to Afghanistan, Petitioner refused to answer any questions and refused to sign a prepared document memorializing the questions presented to him by the interviewing deportation officer. *Id.* Respondents assert that under the circumstances, Petitioner remains properly detained under § 1231(a)(1)(C) given Petitioner's continued refusal to cooperate in execution of his removal despite the government having valid travel documents and standing ready to remove Petitioner to Afghanistan on the next available commercial flight. *Id.* at 2.

On September 17, 2026, Petitioner timely filed a response to Respondents' further status report. (Doc. 41). In his response, Petitioner disputes Respondents' characterization of the August 20, 2026, interview and renews his request for release from custody. *Id.* at 2. Petitioner asserts he "exercised" his right under the Due Process Clause of the Fifth Amendment to "remain silent in cases where the text of [his] statement is used against [him]." *Id.* at 3. Petitioner represents that at the interview, after the deportation officer stated that Petitioner is "refusing this interview" by invoking his right to remain silent, Petitioner asked Deportation Officer Sanchez "not to treat his silence as a refusal[.]" *Id.* Petitioner asserts he did not refuse to appear for the interview "as directed" and did not refuse to sign a sworn statement at the conclusion of the interview. *Id.* at 4. Petitioner requests the audio recording or a declaration from Deportation

---

[2] On August 18, 2026, Petitioner filed a "motion" with attachments seeking to "supplement" the record regarding Petitioner's inability to attend a scheduled appointment before USCIS due to ICE's failure to transport him to the appointment. (Doc. 38). Because the materials do not bear on the limited issue remaining for this Court's adjudication – whether Petitioner's detention is lawful – the Court will deny the motion and direct the Clerk of the Court to strike the motion and attached materials.

Officer Sanchez addressing what occurred at the interview as "evidence" to "allow the Court to resolve the factual dispute based upon the contemporaneous record[.]" *Id.*

Pursuant to 8 U.S.C. § 1231(a)(1)(C), the Court finds that Petitioner's continued lack of cooperation in facilitating removal warrants extending the 90-day removal period during which his detention is mandated. Petitioner acknowledges his refusal to answer the questions presented to him at the August 20 interview with his deportation officer. The questions were substantially the same as the questions he answered during an earlier interview probing his willingness to cooperate with the government's efforts to remove him. *Compare* (Doc. 32-1) with (Doc. 40, "Exhibit A"). Among other questions, Petitioner was asked whether he would voluntarily board a commercial flight to Afghanistan booked and provided by the government, whether there were any circumstances under which he would voluntarily board such a flight, and whether he understood his refusal to cooperate in the government's efforts to remove him could justify his continued detention. Whereas Petitioner previously stated he would not voluntarily board a flight and depart to Afghanistan, he most recently has refused to answer the questions entirely based on his claimed right to remain silent under the Fifth Amendment to the U.S. Constitution.

It is true that Petitioner has a right to remain silent, but it is incorrect to argue that Petitioner's silence may not be considered by this Court in weighing whether Petitioner is obstructing the government's efforts to remove him such that his detention remains mandatory under 8 U.S.C. § 1231(a)(1)(C). The Fifth Amendment ensures that "[n]o person ... shall be compelled in any *criminal* case to be a witness against himself." U.S. Const. amend. V (emphasis added). Notwithstanding the Fifth Amendment's textual limitation to criminal proceedings, a person may invoke the privilege against self-incrimination in noncriminal proceedings, but only if he reasonably believes his answers could be used in a criminal prosecution or lead to other evidence that could be used in a criminal prosecution. *See United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir. 1995); *e.g., United States v. Salgado*, 292 F.3d 1169, 1172-74 (9th Cir. 2002) (finding that the Fifth Amendment does not attach where an interviewing INS investigator has no reason to suspect that the questions asked are likely to elicit an incriminating response), *cert. denied*, 537 U.S. 1011, (2002).

Here, the relevant questions the government sought to ask Petitioner were directed toward establishing whether he would cooperate with efforts to facilitate his removal. Indeed, the deportation officer expressly admonished at the outset that "I desire to take a statement from you relative to your willingness and ability to cooperate with your removal." (Doc. 40, Exhibit A). This is purely an issue of logistics – given Petitioner's refusal in June 2025 to board an aircraft procured by the government to effectuate his removal, it is reasonable for the government to seek assurances from Petitioner about his willingness to cooperate with its future efforts to remove him *before* undertaking the logistics necessary to undertaking his removal. Whatever right he may have to decline to answer these questions, Petitioner has no right under the Fifth Amendment to insist that the Court take no account of his decision to refuse to participate in the interview. *See Zuniga v. Garland*, 86 F.4th 1236, 1240 (9th Cir. 2023) ("Requiring ICE officers to advise an alien that he has the right to remain silent is incongruous in the civil immigration context, in which there is no prohibition against drawing an adverse inference when a petitioner invokes his Fifth Amendment right against self-incrimination.") (internal quotation and citation omitted).

The Court finds that Petitioner's latest date of obstruction was on August 20, 2026, when he refused to participate in the government's interview to develop information to assist it in executing his final order of removal. As Respondents' status report and Petitioner's filing demonstrate that the only barrier to Petitioner's removal is Petitioner's continuing lack of cooperation, the circumstances here warrant further extension of the 90-day removal period under § 1231(a)(1)(C) to November 18, 2026. *See Diouf v. Mukasey*, 542 F.3d 1222, 1230 (9th Cir. 2008).

Accordingly, the removal period is extended to November 18, 2026, pursuant to 8 U.S.C. § 1231(a)(1)(C) and Petitioner's continued detention is mandatory and proper under § 1231(a)(2)(A). The Court will deny Petitioner's renewed request for release and direct Respondents to serve and file no later than November 3, 2026, a further status report addressing Petitioner's removal status and show why, if he has not been removed, he should not be released and subject to a bond hearing prior to any re-detention following the statutory removal period. Petitioner will be permitted 14 days to respond to Respondents' status report.

///

**III. Conclusion and Order**

Accordingly, it is HEREBY ORDERED that:

1. Petitioner's renewed request for release (Doc. 41) is DENIED;
2. Petitioner's motion to supplement the record (Doc. 38) is DENIED;
3. The Clerk of the Court is directed to STRIKE Petitioner's motion and supplementary materials attached thereto (Doc. 38);
4. Respondents SHALL SERVE and FILE **no later than November 3, 2026**, a status report addressing Petitioner's removal status and show cause why, if he has not then been removed, Petitioner remains subject to discretionary detention under § 1231(a)(6) or why Petitioner should not be released and subject to a bond hearing prior to any re-detention; and
5. Petitioner SHALL FILE a response to Respondents' status report no later than 14 days after its service and filing.

IT IS SO ORDERED.

Dated: **September 23, 2026**

UNITED STATES MAGISTRATE JUDGE